IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA,
WESTERN DIVISION

IN RE:

JERRY LUTHER SMELLEY, JR.
and LISA GRAMMER SMELLEY,            BK 05-73529-CMS-13

    DEBTORS.

## MEMORANDUM OF DECISION

This matter was set for hearing on confirmation of the debtors' (Jerry Luther Smelley, Jr. and Lisa Grammer Smelley (Smelleys)) amended plan of reorganization (BK Doc. 38), the objection of Marie S. Brown (Brown) to the confirmation of the plan (BK Doc. 49), and the Chapter 13 trustee's motion to dismiss the case without confirmation (BK Doc. 14). The court has considered the evidence presented in court, the arguments of parties, and the court's file in this case and finds that Brown's objection is due to be **OVERRULED** and the amended plan of reorganization, **CONFIRMED**.

## FINDINGS OF FACT

The debtors filed a petition for bankruptcy reorganization on October 13, 2005. Notice was sent to all scheduled creditors, including Brown, advising that February 15, 2006 was the deadline for filing claims to share in the distribution under the debtor's plan (BK Doc. 6). There is no dispute that this notice was received by Brown.

The original plan of reorganization submitted by the Smelleys (BK Doc. 4) provided for no distribution to unsecured creditors including Brown. Brown had been scheduled as an unsecured creditor with an unliquidated claim listed as "a disputed lawsuit" in the amount of $1.00. Brown had

1

filed a lawsuit in Tuscaloosa County Circuit Court in 2004 alleging that the debtor Lisa Smelley had fraudulently used a power or powers of attorney to use funds from Brown's savings account and to obtain proceeds from a mortgage on Brown's property. Debtor Lisa Smelley testified that Brown is her husband's great-aunt. Brown's claim of fraudulent conduct is directed against debtor Lisa Smelley, and not debtor Jerry Smelley. For the purposes of this confirmation hearing the court will assume the Brown's allegations against debtor Lisa Smelley are true, although the debtor denies the allegations.

The Tuscaloosa County Circuit Court case had already been pending for approximately two years when the bankruptcy petition was filed. There was no evidence that it was set for trial or at any other critical point, at or about the time the bankruptcy petition was filed.

After the bankruptcy filing, Brown filed no objection to confirmation of the debtors' original plan even though it provided no payment to unsecured creditors. Additionally, she did not file a claim as a creditor.

On the other hand, two of Lisa Smelley's co-defendants in Brown's state court lawsuit did file objections to the confirmation of the debtors' first plan. After a February 8, 2006 hearing, the court sustained these two objections, and granted the debtors until February 14, 2006 to file an amended plan. (BK Doc. 35) The order also specified that if the debtors did not file an amended plan by February 14, 2006, the case would be dismissed without further hearing. Brown's attorney was also present at the February 8, 2006 hearing.

The Smelleys filed their amended plan on February 14, 2006 as directed, and provided that unsecured creditors would be paid 100%. Brown still had not filed a claim to be allowed as a creditor in the case, nor had she filed an objection to confirmation. The claims bar date passed on

2

February 15, 2006. Subsequently, on February 17, 2006, Brown filed her Proof of Claim No. 14.

On March 7, 2006, Brown did file an objection to the confirmation of the amended 100% plan. (BK Doc. 49) She alleged that the Smelleys' plan had not been filed in good faith as required by 11 U.S.C. § 1325(a)(3) and should not be confirmed. The Smelleys also filed an objection to Brown's Claim 14 (BK Doc. 44), asking the court to disallow it as tardily filed.

A hearing was conducted on March 28, 2006 and the court sustained the debtors' objection to Brown's claim (BK Doc. 57), and disallowed Claim 14 because it was filed after the bar date. By agreement, Brown's objection to confirmation, and the trustee's motion to dismiss were continued to April 10, 2006 for trial.

At the April 10, 2006 hearing, Lisa Smelley testified that the Smelleys' financial difficulties resulted from their attempt to open a second daycare business. The debtors owned the location of the original daycare center, and had leased a second location in hope of expanding their business. The attempt proved to be unsuccessful. Instead, the new leased location lost money and the original daycare center was supporting both locations financially. The Smelleys closed the leased location prior to the filing of their bankruptcy petition. Lisa Smelley testified that the failure of the leased daycare center was the precipitating cause of the bankruptcy filing, not Brown's 2004 lawsuit. The debtors' schedules reflected approximately $22,000.00 in unsecured debt owed to other creditors than Brown; approximately $5,000.00 in secured debt on personal property; and approximately $557,000.00 in debt secured by the Smelleys' residential and business real estate.

The debtor Lisa Smelley testified that the schedules, as amended, were accurate. She testified that they reflected all actual income and expenses; all real and personal property; and all creditors. She did testify that the original schedules had inaccuracies because they were prepared hastily in

3

Case 05-73529-CMS7    Doc 84    Filed 06/16/06    Entered 06/16/06 14:11:12    Desc Main
Document      Page 3 of 10

order to file the petition prior to the October 17, 2005 effective date of the amended Bankruptcy Code. The amended code created new burdens and expenses for debtors filing bankruptcy petitions, as well as making prepetition debts for fraud nondischargeable for individuals in Chapter 13, as well as in Chapter 7.

Additionally, the debtor testified that the schedules I and J reflecting income and expenses, as originally filed, were based upon her projected estimate of income and expenses the Smelleys would have after consolidating operations into one daycare location. On the other hand, Smelley said amended Schedules I and J, filed April 10, 2006 (BK Docs. 67 and 68), reflected the actual income and expenses of the one-center daycare operation after months in operation. There was no evidence that the schedules, as amended, were inaccurate. A comparison of the original schedules with the amended schedules shows that the updated income and expense statements are the only material changes in the new schedules.

Lisa Smelley testified that neither she nor her husband, Jerry Luther Smelley, Jr., had filed a prior bankruptcy petition. She testified that the restructured daycare center was generating sufficient funds to pay all creditors 100% over five years, and that the amended plan reflected this change in financial circumstances.

Chapter 13 Trustee C. David Cottingham questioned the debtor about the actual feasibility of the plan, a requirement under 11 U.S.C. § 1325(a)(6). In answer, Lisa Smelley testified that the current daycare center has a permit for 82 children. The Smelleys have between 75 and 80 children now, with approximately 10% of these children paid for by the state at the rate of $70.00 per week. Approximately 90% of the children are private clients, paying $90.00 per week. She further testified that the daycare center had seven full-time employees, and two part-time employees. The debtor

4

testified that the Smelleys would increase their proposed plan payment to $800.00 per month, which would be sufficient to pay 100% to unsecured creditors, and to pay all secured creditors at the proposed plan rate of interest.

Based on the amendments to the schedules and the oral agreement to increase plan payments to $800.00 per month, the Chapter 13 trustee announced that he would withdraw his motion to dismiss the case. He recommended confirmation of the plan with a payment of $800.00 per month.

At the close of the hearing, the court took Brown's remaining objection to confirmation under submission for a decision.

## CONCLUSIONS OF LAW

The court has jurisdiction of the Smelleys' Chapter 13 case pursuant to 28 U.S.C. § 1334(a). The court has jurisdiction of this lawsuit, a core bankruptcy proceeding pursuant to 28 U.S.C. § 157(a), under 28 U.S.C. § 1334(b). Jurisdiction is referred to this Bankruptcy Court by the General Order of Reference of the United States District Courts for the Northern District of Alabama signed July 16, 1984, As Amended July 17, 1984.

## I.

### Determining "good faith" in the meaning of 11 U.S.C. § 1325(a)(3) requires an analysis of the circumstances of each case.

11 U.S.C. § 1325(a) provides that a bankruptcy court "shall confirm" a Chapter 13 debtor's proposed reorganization plan if certain conditions have been met, with the debtor bearing the initial burden of showing compliance with the statutory requirements. An objecting creditor may challenge confirmation by offering evidence refuting the initial showing.

The requirement still in issue after the April 10, 2006 hearing is stated at Section 1325(a)(3).

5

Case 05-73529-CMS7    Doc 84    Filed 06/16/06    Entered 06/16/06 14:11:12    Desc Main
Document      Page 5 of 10

That section provides the following:

(a) Except as provided in subsection (b), the court shall confirm a plan if – ...

... (3) the <u>plan has been proposed in good faith</u> and not by any means forbidden by law; ... (emphasis added)

Since the code does not define good faith or provide objective criteria for determining its existence, a majority of courts have applied a "totality of the circumstances" analysis to this dispute. In the Eleventh Circuit, that analysis is conducted under the framework provided by <u>Kitchens v. Georgia Railroad Bank and Trust Company, et al.</u> (<u>In re Kitchens</u>), 702 F.2d 885 (11th Cir. 1983). The <u>Kitchens</u> factors for determining good faith can be summed up as follows:

1. The amount of the debtor's income from all sources; 2. Living Expenses of the debtor and dependents; 3. Amount of the attorney's fees; 4. Probable or expected duration of the debtor's Chapter 13 plan; 5. Motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; 6. The debtor's degree of effort; 7. The debtor's ability to earn and likelihood of fluctuation in his earnings; 8. Special circumstances such as an inordinate medical expense; 9. Frequency with which the debtor has sought relief under the Bankruptcy Reform Act; 10. Circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; 11. The burden which the plan administration would place on the trustee; 12. The type of debt to be discharged and whether such debt would be dischargeable under Chapter 7; 13. The accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court; and 14. The extent to which the claims are modified and extent of preferential treatment among classes of creditors.

See <u>Kitchens</u>, 702 F.2d at 888-889.

As stated by the Eleventh Circuit court: "The factors we have explicitly mentioned are not intended to comprise an exhaustive list, but they should aid bankruptcy courts as they determine whether debtors have proposed chapter 13 plans in good faith." This basic approach, adopted in 1983, is still used by lower courts in the Eleventh Circuit, with the case-by-case analysis producing different conclusions based on the fact evidence.

6

## II.

**There is no evidence showing that the Smelleys proposed
their amended Chapter 13 plan in bad faith.**

The court will review each of the Kitchens factors in relation to the evidence in this case:

1. **The amount of the debtors' income from all sources**: The debtors presented testimony and amended Schedule I to reflect the gross income currently received from the Smelleys' daycare center at approximately $22,000.00 per month. There was no evidence that the debtors have any other source of income or that this amount was not correct.

2. **Living expenses of the debtor and dependents**: The debtors submitted their amended Schedule J reflecting both their household expenses and the current operating expenses of the daycare center. There was no evidence that these expenses were incorrect.

3. **Amount of attorney fees**: The debtors' plan proposed attorney fees in the amount of $1,800.00, which is reasonable for a case of this nature.

4. **Probable or expected duration of the debtors' chapter 13 plan**: The debtors' proposed plan was for a term of 60 months, the maximum time allowed by law.

5. **Motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13**: The debtor testified that this petition was filed as a result of the failed daycare center expansion, not the lawsuit pending in Tuscaloosa County Circuit Court. The lawsuit had been pending for approximately 2 years, and there was no evidence that this petition was filed on the eve of any scheduled trial date, or other critical proceeding.

6. **Debtor's degree of effort**: The debtors have proposed submitting all their disposable income to the trustee for 60 months in order pay their plan creditors.

7. **The debtor's ability to earn and likelihood of fluctuation in his earnings**: The debtors presented evidence of the capacity of their daycare center, the income it earns, and its expenses. There was no evidence suggesting major fluctuations in expenses or earnings in the future.

8. **Special circumstances such as an inordinate medical expense**: This was not a factor in the Smelley case.

9. **Frequency with which the debtor has sought relief under the Bankruptcy Reform Act**: This was the first bankruptcy filing for either debtor.

10. **Circumstances under which the debtor contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors**: Brown has alleged that her claim against the

7

debtor Lisa Smelley resulted from fraudulent conduct. There is no suggestion that the debtor Jerry Smelley engaged in any fraudulent conduct.

11. **The burden which the plan administration would place on the trustee**: There was no evidence that this plan would create any unusual burden for the trustee. The trustee has recommended its confirmation.

12. **The type of debt to be discharged and whether such debt would be dischargeable under Chapter 7**: Under former law, this issue has been important for analyzing good faith in "percentage" Chapter 13 plans where some unpaid, nondischargeable debts might be discharged. However, the Smelleys' plan proposed to pay 100% to all creditors. While unsecured debts stemming from fraud could be discharged in Chapter 13, an alleged fraudulent debt would nevertheless be paid in full in a 100% plan. Brown's claim would have been due payment in full in the Smelleys' Chapter 13, if her claim had been timely filed.

13. **The accuracy of the plan's statements of debts and expenses and whether any inaccuracies are an attempt to mislead the court**: There did not appear to be any material inaccuracies in the schedules as amended, and there was no evidence that the Smelleys attempted to mislead the court.

14. **The extent to which the claims are modified and extent of preferential treatment among classes of creditors**: There does not appear to be any preferential treatment among classes of creditors because the plan proposed to pay all allowed claims in full.

The presence or absence of any of the above factors is not per se determinative of whether or not a plan is filed in good faith. The fact that the debtors attempted to discharge a debt in a Chapter 13 case which would be nondischargeable in a Chapter 7 case alone does not result in a finding that the plan was not proposed in good faith. See State of Ohio Student Loan Commission v. Doersam (In re Doersam), 849 F.2d 237, 239-40 (6th Cir. 1988); Hardin v. Caldwell (In re Caldwell), 895 F.2d 1123, 1128 (6th Cir. 1990); In re White, 273 B.R. 279, 283 (Bankr. M.D. Fla. 2001); and In re Griggs, 181 B.R. 111, 115 (Bankr. N.D. Ala. 1994).

The evidence does not indicate that this bankruptcy petition was filed because of Brown's suit. That action had been pending for approximately two years on the petition date. The evidence before the court showed that the Smelleys sought bankruptcy protection only after the failure of the

8

expansion of the daycare business. The debtors' schedules also included substantial debt to creditors other than Brown.

It appears to the court that Brown's dissatisfaction with this amended 100% Chapter 13 plan stems from the fact that she cannot be paid as an allowed unsecured creditor under its provisions. That is not due to any action or inaction by the debtors.

The debtors correctly listed Brown as a creditor and the court provided her with notice of the February 15, 2006 deadline for filing claims. Brown did not object to confirmation of the debtors' original plan which proposed no distribution to her at all. Nor did she object to confirmation of this amended 100% plan until after the bar date had run. There is no evidence that the debtors did anything to prevent the creditor from filing a claim by February 15, 2006. After the claim was filed late, the debtors did object, as allowed by 11 U.S.C. § 502(b)(9). The debtors' exercise of a statutory right cannot be viewed as evidence of bad faith. After a March 28, 2006 hearing, the court disallowed the Brown claim as tardily filed. Consequently, Brown is not an allowed unsecured creditor to be paid in this 100% plan solely because she did not file a proof of claim by February 15, 2006, the last day for doing so under the Bankruptcy Code. The creditor's failure does not reflect on the debtors' motivations for Chapter 13 reorganization.

The court, having considered the totality of the circumstances in this case, must find that the Smelleys made an adequate showing that their Chapter 13 plan complied with 11 U.S.C. § 1325(a), including the good faith requirement of Section 1325(a)(3); and that objecting creditor Marie S. Brown failed to refute that evidentiary showing.

## CONCLUSION

Consequently, the court must **CONFIRM** the Smelleys' Chapter 13 plan as amended, and

Case 05-73529-CMS7    Doc 84    Filed 06/16/06    Entered 06/16/06 14:11:12    Desc Main
Document      Page 9 of 10

**OVERRULE** Brown's objection to confirmation. As previously noted, the trustee withdrew his motion to dismiss the case, and recommended confirmation of the 100% plan with a payment increased to $800.00 per month.

An order, consistent with these findings pursuant to Fed. R. Bankr. P. 7052, will be entered separately.

**DONE and ORDERED** this June 16, 2006.

/s/ C. Michael Stilson
C. Michael Stilson
United States Bankruptcy Judge